# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00732-RJC-DSC

| | |
|---|---|
| JACQUELINE BELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| DEPARTMENT OF HOMELAND SECURITY, | ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Doc. 23, and the parties' associated briefs, Docs. 24, 29 and 32.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u> as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Taking the facts of the Amended Complaint as true, Plaintiff Jacqueline Bell is an African American female who is over forty years old. Beginning in 2004, she worked at the Charlotte Douglas International Airport as an Assistant Federal Security Director for Screening with the Transportation Security Administration ("TSA"). TSA is a component of the Department of

Homeland Security ("DHS"). Deputy Federal Security Director Kurt Jordan, a Caucasian male, was Plaintiff's immediate supervisor. David Wray, also a Caucasian male, became the Federal Security Director in August 2009.

Plaintiff alleges that she was subjected to wrongful discharge and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., on the basis of her age, race, and sex. She further alleges that she was subjected to retaliation for engaging in protected equal employment opportunity ("EEO") conduct. Plaintiff also asserts state law claims for wrongful discharge on the basis of sex, race, and age discrimination in violation North Carolina public policy and the North Carolina Equal Employment Practices Act, N.C.G.S. § 143 - 422.2, et seq.

On or about September 20, 2011, Plaintiff filed a formal EEO Complaint, Case No. HS-TSA-01767-2011, with TSA alleging discrimination based upon her race, sex, age, and prior EEO activity as well as hostile work environment. On August 29, 2012, DHS terminated Plaintiff's employment with TSA. On September 24, 2012, Plaintiff appealed her termination to the Merit Systems Protection Board ("MSPB"). On November 14, 2012, Plaintiff filed a second formal EEO Complaint, Case No. HS-TSA-23243-2012, alleging that she had been subjected to discrimination on the basis of her age, race, and reprisal when she was terminated.

On November 4, 2013, Plaintiff's first Complaint was dismissed by DHS because she elected to pursue her claims of discrimination as a "mixed case" in an MSPB appeal. See Doc. 23, Exhibit 1, Final Agency Decision, Case No. HS-TSA-01767-2011 (Nov. 4, 2013). The Procedural Dismissal noted that Plaintiff's second Complaint, HS-TSA-23243-2012, was based upon her

termination on November 14, 2012, and since her harassment and termination claims were "inextricably intertwined", they should both be referred to the MSPB. Id. The Procedural Dismissal also noted that Plaintiff's counsel had contacted the EEOC Administrative Law Judge (ALJ) who was assigned to adjudicate HS-TSA-01767-2011 and requested that that case "be held in abeyance, as she was also pursuing her claims through [MSPB]." Id.

On February 27, 2013, Plaintiff's second EEO Complaint was dismissed by DHS because "Complainant has already filed, in another forum, an appeal of TSA's termination of her employment." See Doc. 23, Exhibit 2, Final Agency Decision, Case No. HS-TSA-23243-2012 (Feb. 27, 2013). The Procedural Dismissal noted that pursuant to 29 C.F.R. § 1614.302(b), "a complainant may file a mixed-case complaint within the EEO process or with the MSPB, but not with both." Id. Plaintiff first filed with the MSPB, and as of the date of the Procedural Dismissal, her MSPB appeal was still pending.

A hearing on Plaintiff's appeal to the MSPB was conducted on January 14, February 3-4 and April 29-20, 2014 before ALJ Anthony W. Cummings. The ALJ considered Plaintiff's claims regarding her termination as well as her claims of discrimination on the basis of her age, race, and sex, hostile work environment, and reprisal. On August 14, 2015, the ALJ issued a 106 page Initial Decision, upholding TSA's termination of Plaintiff due to her poor performance. The ALJ found that TSA had articulated a legitimate non-discriminatory reason for its actions. The ALJ specifically found that Plaintiff failed to prove her termination resulted from discrimination on the basis of her age, race, or sex; that she had not been subjected to a hostile work environment; and that she failed to prove she had been subject to retaliation for engaging in protected EEO activity.

This Initial Decision explained Plaintiff's options for further review, and stated that the decision would become final on September 18, 2015 unless a Petition for Review ("PFR") was filed by that date. Plaintiff had thirty days to file a PFR with the full Board of the MSPB, or if the Initial Decision was received by Plaintiff or her representative more than five days after it was issued, then thirty days after Plaintiff or her representative actually received the Initial Decision. Alternatively, Plaintiff could request review of the Initial Decision on her discrimination claims by the EEOC in accordance with 5 U.S.C. § 7702(b)(1), not later than thirty days after the Initial Decision became final. Finally, if she did not request review of the Initial Decision by the EEOC, she had thirty calendar days after the Initial Decision became final to seek review of all of her claims in district court in accordance with 5 U.S.C. § 7703(b)(2).

Having received the ALJ's Initial Decision on August 16, 2015, Plaintiff elected to file a PFR with the full MSPB on September 17, 2015. In her PFR, Plaintiff challenged only the ALJ's findings regarding her termination and his conclusion that she had not been subject to reprisal for engaging in protected EEO activity. She did not raise her age, race, or sex discrimination claims in her PFR. The MSPB only considered Plaintiff's termination and reprisal claims. On September 22, 2016, the MSPB issued a Final Order affirming the ALJ's findings with regard to Plaintiff's claims for unlawful termination and reprisal.

The MSPB Final Order advised Plaintiff that she could request review of the final decision on her discrimination claims by the EEOC in accordance with 5 U.S.C. § 7702(b)(1) within thirty days of the date she received the Final Order. Alternatively, she could seek review of the final decision on all of her claims in district court pursuant to 5 U.S.C. § 7703(b)(2) within thirty days of the date she or her representative received the Final Order. On October 24, 2016, Plaintiff timely filed this Complaint.

Defendant argues that Plaintiff's Amended Complaint should be dismissed in its entirety because her claims are either procedurally invalid for failure to exhaust her administrative remedies or substantively invalid for failure to state a claim upon which relief may be granted.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a case shall be dismissed in the absence of subject matter jurisdiction, and "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The existence of subject matter jurisdiction is a threshold issue for the court before it reaches the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citing Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Federal Rule of Civil Procedure 12(b)(6)

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

**A. North Carolina State Law Claims**

Plaintiff asserts three claims based upon the public policy of the State of North Carolina and the North Carolina Equal Employment Practices Act, N.C.G.S. §§ 143-422.2, et seq. Specifically, she alleges wrongful discharge on the basis of age, race, and sex discrimination.

In 1972, Title VII was amended to allow civil actions by federal employees against the government and further provided for "a careful blend of administrative and judicial enforcement powers." Brown v. General Serv. Admin., 425 U.S. 820, 833 (1976); see also 42 U.S.C. § 2000e-16(c). In Brown, the Supreme Court held that § 2000e-16 "provides the exclusive judicial remedy for claims of discrimination in federal employment" and concluded that it lacked subject matter jurisdiction over a federal employee's claim of discrimination under 42 U.S.C. § 1981. Brown, 425 U.S. at 835. The Court noted that if § 2000e-16 were not held to preempt other remedies, "the crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated 'by the simple expedient of putting a different label on [the] pleadings.'" Id. at 833 (quoting Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973)).

Relying on Brown, lower courts have dismissed state and federal law claims for discrimination brought by federal employees on the grounds that Title VII provides their exclusive remedy. See, e.g., Baqir v. Principi, 288 F. Supp. 2d 706, 709 (W.D.N.C. 2003)(dismissing plaintiff's claims for breach of contract and wrongful discharge in violation of North Carolina public policy); Mangum v. Postmaster Gen. United States Postal Serv., No. 1:02cv00561, 2003 WL 22741191 (M.D.N.C. Nov. 14, 2003) (dismissing plaintiff's non-Title VII claims); Gibson v. Henderson, 129 F. Supp. 2d 890, 903 (M.D.N.C. 2001) (dismissing state claims of intentional and

negligent infliction of emotional distress).  In an unpublished decision, the Fourth Circuit affirmed the applicability of Brown to discrimination claims brought by federal employees. See Johnson v. Runyun, No. 95-3083, 1996 WL 405218, at *2 (4th Cir. July 19, 1996) (affirming dismissal of former federal employee's constitutional tort claims arising from the same facts that formed the basis of his procedurally barred Title VII claims).

The ADEA also provides the exclusive remedy for claims of age discrimination in federal employment. See, e.g., Francis v. Perez, 256 F. Supp. 3d 1 (D.D.C. 2017) ("The Supreme Court has made clear that federal employees can avail themselves of the benefits of Title VII and ADEA protections but that those statutes are the exclusive means to remedy alleged discrimination covered by those laws."); Stoyanov v. Mabus, 126 F. Supp. 3d 531, 539 (D. Md. 2015)("Title VII and the ADEA are the exclusive remedies available to a federal employee complaining of employment discrimination that is based on national origin, retaliation, and age."); Lurie v. Meserve, 214 F. Supp. 2d 546 (D. Md. 2002) (noting that Congress intended for the ADEA to preempt all other remedies arising out of age discrimination claims)(internal citations omitted).

Here, Plaintiff re-alleges the basis for her Title VII and ADEA claims, and casts those same facts in support of her North Carolina state law claims. She makes no factual distinctions between her state and federal claims.  Plaintiff's opposition brief fails to address Defendant's argument that her state law claims should be dismissed.  Since Title VII and the ADEA provide the exclusive remedy for Plaintiff's claims of discrimination on the basis of her age, race, and sex, her state law claims must be dismissed.

   A.  Plaintiff's Claims of Discrimination Based upon Age, Race, and Sex

The MSPB is an independent, quasi-judicial federal administrative agency established to review civil service decisions. See 5 U.S.C. § 7701. A federal employee subjected to an adverse personnel action such as a discharge or demotion may appeal the agency's decision to the MSPB. See 5 U.S.C. §§ 7512, 7701. The employee may allege discrimination in violation of a federal statute, such as Title VII or the ADEA. See 5 U.S.C. § 7702(a)(1). When an employee appeals a personnel action to the MSPB and alleges that the action was based upon discrimination, she is deemed to have brought a "mixed case." See 29 CFR § 1614.302 (2012). As discussed in detail above, Plaintiff chose to pursue her claims as a "mixed case" before the MSPB.

When a federal employee elects to pursue a mixed case before the MSPB, she must exhaust her claims in that forum before filing a civil action. Howland v. United States Postal Serv., 209 F. Supp.2d 586, 590 (W.D.N.C. 2002)(citing McAdams v. Reno, 64 F.3d 1137, 1142 (8th Cir.1995)); see also, Stoll v. Principi, 449 F.3d 263, 266-67 (1st Cir. 2006). It is well-established that a complainant who withdraws an appeal before the MSPB thus fails to exhaust administrative remedies and is barred from filing a civil action in district court. Khoury v. Meserve, 268 F. Supp. 2d 600, 610-11 (D. Md. 2003) (citing Vinieratos v. U.S. Dep't of Air Force, 939 F.2d 762, 770-71 (9th Cir. 1991) ("Previous decisions by this court and others have held that abandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial review.")); Howland, 209 F. Supp. 2d at 590 (W.D.N.C. 2002) ("By withdrawing his MSPB appeal, Plaintiff has failed to exhaust his administrative remedy."); Hay v. Sec'y of the Army, 739 F. Supp. 609, 612 (S.D. Ga. 1990) ("In addition, after filing the instant case, plaintiff withdrew his MSPB appeal. . . . Consequently, it is clear that the MSPB did not have the opportunity to review the merits of plaintiff's employment discrimination claims. In effect, plaintiff is circumventing the

administrative review process, which is central to Title VII, by raising his employment discrimination claims in this Court without first obtaining substantive review of those claims from the appropriate administrative agencies.")(internal citations omitted). As explained by one District Court in Khoury v. Meserve, "[b]y extension therefore, a complainant who withdraws certain claims in an appeal to the MSPB before a final decision on the merits also fails to exhaust administrative remedies with respect to those particular claims." Khoury, 268 F.Supp.2d at 611.

Plaintiff's MSPB appeal resulted in a hearing before an ALJ. The ALJ issued an Initial Decision on August 14, 2015. The ALJ affirmed Plaintiff's termination and rejected her claims of discrimination based upon age, race, and sex, hostile work environment, and reprisal for engaging in protected EEO activity. Plaintiff had the option to seek review of the ALJ's Initial Decision by filing a PFR with the full MSPB, a complaint with the EEOC, or a civil action in district court.

On September 17, 2015, Plaintiff filed a PFR with the full MSPB challenging only the ALJ's findings regarding her termination and claim of reprisal. She did not raise her age, race, or sex discrimination claims in her PFR. Accordingly, the MSPB did not review those claims. On September 22, 2016, the MSPB issued a Final Order affirming the ALJ's findings with regard to Plaintiff's claims for unlawful termination and reprisal.

Plaintiff failed to exhaust her administrative remedies with regard to her claims for age, race, and sex discrimination by not appealing the ALJ's Initial Decision on those claims to the full MSPB. This Court lacks subject matter jurisdiction over those claims and they must be dismissed. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII race and sex discrimination claims as well as her ADEA claim be granted.

**B. Plaintiff's Claim for Retaliation for Engaging in Protected Activity**

Plaintiff has exhausted her administrative remedies as to her Title VII claim for retaliation. The anti-retaliation provision in Title VII provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In order to establish a prima facie Title VII retaliation claim, a plaintiff must show: "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer–Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotation marks omitted).

The "anti-retaliation provision serves to 'prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.'" DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006)). This provision "encourage[s] the early reporting vital to achieve Title VII's goal of avoiding harm." Boyer-Liberto, 786 F.3d at 283. "An adverse employment action is a discriminatory act that 'adversely affect [s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)).

In Swierkiewicz v. Sorema, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under McDonnell Douglas...is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. at 511. Thus, the Court concluded "[A]n

employment discrimination plaintiff need not plead a prima facie case of discrimination...." Id. at 515.

Following the Supreme Court's decisions regarding pleading standards in Twombly and Iqbal, the Fourth Circuit examined those standards in the context of an employment discrimination case in McCleary-Evans v. Maryland Department of Transportation, 780 F.3d 582 (4th Cir. 2015) cert. denied, 136 S. Ct. 1162 (2016). Applying Swierkiewicz, the Fourth Circuit held that plaintiff was not required to "plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." Id. at 585. Nonetheless a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute" in accordance with Iqbal. Id. Therefore, the question at the motion to dismiss stage is whether plaintiff has stated "a plausible claim for relief under Title VII...." Ciociola v. Balt. City Bd. of Sch. Commissioners, No. CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

In terms of retaliation, the Fourth Circuit has articulated an "expansive" view of what constitutes oppositional conduct, recognizing that it "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." DeMasters v. Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015) (quoting Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)). While oppositional activity must be directed at "an unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-3(a), the Fourth Circuit has made clear that this phrase should be interpreted broadly. See Boyer-Liberto, 786 F.3d at 282.

At a minimum, Plaintiff must plead facts making it plausible that she was subjected to retaliation as a result of engaging in protected activity. In her Amended Complaint, Plaintiff

alleges that she filed a formal complaint with the TSA's EEO office on July 30, 2010; reported discriminatory acts by her superiors and participated in a colleague's EEO activity sometime between February and July 2011; and filed a formal complaint with the TSA's EEO office in September 2011. Plaintiff also alleges that because of this protected activity, TSA took materially adverse action against her by placing her on administrative leave in August 2011, demoting and relocating her to an off-site training facility in October 2011, issuing her an unwarranted negative performance rating, and terminating her employment in October 2012.

Defendant argues that Plaintiff's allegations do not establish a causal relationship between her protected activity and the adverse actions by TSA and therefore, her claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Assuming Plaintiff's allegations to be true and drawing all reasonable inferences in her favor, the Court finds that Plaintiff's Amended Complaint states a plausible claim for retaliation under Title VII. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII retaliation claim be <u>denied</u>.

## IV. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Doc. 23, be **GRANTED IN PART AND DENIED IN PART** that is, all Plaintiff's claims against Defendant be dismissed with prejudice EXCEPT Plaintiff's Title VII Claim for Retaliation.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections

to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties, and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: May 31, 2018

David S. Cayer
United States Magistrate Judge